UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THEODORE R.[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:23-CV-00441-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Theodore R. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and § 1383(c)(3). For the reasons set forth below, that decision is AFFIRMED.

**PROCEDURAL HISTORY**

      Plaintiff protectively filed an application for disability insurance benefits on May 6, 2018, alleging a disability onset date of February 21, 2017. Tr. 90. The Commissioner denied plaintiff's claim on November 2, 2018, and again upon reconsideration on March 27,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

2019.  Tr. 102, 118.  Plaintiff filed a written request for a hearing on May 24, 2019, and a hearing was held before Administrative Law Judge Robert Campbell on January 12, 2022.  Tr. 64–88.  The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act.  Tr. 15–29.  The Appeals Council denied plaintiff's request for review on January 26, 2023.  Tr. 1–6.  Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 21, 2017, through his date last insured, September 30, 2021. Tr. 18. At step two, the ALJ determined plaintiff suffered from the following severe impairments: multiple sclerosis (MS), depression, anxiety, and personality disorder. Tr. 18.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with conditions that he can "lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit about six hours, stand and walk about two hours in an eight-hour workday, . . . do simple routine work, no teamwork or collaboration [with] coworkers and no public contact." Tr. 20.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. Tr. 27.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including final assembler, document preparer, and hand packager. Tr. 28. Thus, the ALJ concluded plaintiff was not disabled at any time from February 21, 2017, through September 30, 2021, the date last insured. Tr. 29.

3 – OPINION AND ORDER

**DISCUSSION**

Plaintiff argues that the ALJ failed to incorporate into the RFC the full extent of the limitations identified by consultative examiner, Scott Kaper, Ph.D, whom the ALJ found was persuasive. Plaintiff contends that the failure to properly credit Dr. Kaper's opinion resulted in reversible error at step five.

Dr. Kaper opined that plaintiff "would likely do best . . . with simpler tasks" and "could only sustain simpler tasks if there were very few interpersonal demands put upon him." Tr. 523. Dr. Kaper further opined that it was "hard to imagine" plaintiff "working successfully with the general public" or "in close contact [with] co-workers," and that plaintiff "would work best alone." *Id.* The ALJ found Dr. Kaper's opinion persuasive, Tr. 23, 27, and "considered" Dr. Kaper's opinion "in limiting [plaintiff] to work with no public contact and no requirements for collaboration or teamwork with coworkers." Tr. 23.

Plaintiff contends that by merely limiting him from engaging in teamwork and collaboration with co-workers, the RFC fails to give full credit to Dr. Kaper's opinion that he "should work alone." Pl. Br. 10. Plaintiff argues that, contrary to Dr. Kaper's opinion, the RFC permits "unhindered proximity to others and unrestricted interaction with others so long as he was not involved in teamwork or collaborative activities." *Id.* at 8.

But Dr. Kaper stated only that plaintiff "would work best alone," not that he should have no contact with co-workers. Additionally, Dr. Kaper opined that plaintiff could sustain simpler tasks if there were "*very few* interpersonal demands." Tr. 523 (emphasis added). Dr. Kaper did not say that plaintiff could have *no* interpersonal contacts. Dr. Kaper also stated it was "hard to imagine" that plaintiff could work "in close contact [with] co-workers." This does not indicate that plaintiff cannot have any contact with co-workers. Rather, courts have found that

4 – OPINION AND ORDER

restrictions using terms such as "close contact" and "close proximity" with co-workers means teamwork. *See Peterson v. Astrue*, No. CIV. 10-138-JE, 2011 WL 1131495, at *6 (D. Or. Mar. 2, 2011), *report and recommendation adopted,* No. CIV. 10-138-JE, 2011 WL 1114183 (D. Or. Mar. 28, 2011) (finding the ALJ reasonably interpreted the limitation that one should not work in "close coordination" or "close proximity" with others to mean that the "individual should have [a] task that they just perform by themselves," i.e., "[t]hey can be around other people, but actually do the work themselves"); *Stinson-Walker v. Saul*, No. 3:19-CV-00334-WGC, 2020 WL 4805428, at *4 (D. Nev. Aug. 17, 2020) (noting an RFC that stated the plaintiff "could not work in close proximity to supervisors or coworkers (meaning that she could not function as a member of a team)"); *McCullough v. Astrue*, No. 12-CV-01990-EJD, 2013 WL 4806866, at *1 (N.D. Cal. Sept. 9, 2013) (citing VE testimony that jobs requiring "minimal contact with the public and no close contact with coworkers[, meaning] nothing like team work" included production assembler, compact assembler, agricultural sorter, and maid) (alteration in original). Dr. Kaper's opinion is not ambiguous, but even if it were, the ALJ is responsible for resolving ambiguities in the record. *Sanders v. Colvin*, No. 3:12-CV-01059-HZ, 2013 WL 5376510, at *7 (D. Or. Sept. 24, 2013) (observing that the ALJ is responsible for resolving conflicts and ambiguities in the record, and upholding an RFC with a limitation that the plaintiff "can . . . work best alone, not as part of a team"). The ALJ correctly factored Dr. Kaper's restrictions into the RFC by limiting plaintiff to "no collaboration or teamwork with coworkers."

Plaintiff asserts that the ALJ erred by failing to put a specific measure of time on his interactions with coworkers, such as whether they could be occasional or infrequent, or brief or superficial. But, as the Commissioner correctly observes, Dr. Kaper did not opine that plaintiff could only tolerate brief, superficial, occasional, or infrequent interaction.

5 – OPINION AND ORDER

Plaintiff also contends the ALJ erred when he "flatly ignored [plaintiff's] social functioning deficits" pertaining to supervisors. Pl. Br. 11. Plaintiff claims this issue is relevant because he must be able to respond appropriately to supervisors in order to "perform the basic mental demands of unskilled work." *Id.* (citing SSR 85-15). But, again, Dr. Kaper's opinion does not contain any additional limitations regarding supervisors. Moreover, the ALJ observed that plaintiff reported he got along "fine" with authority figures and had never been fired or laid off because of problems getting along with other people. Tr. 19 (citing Tr. 258).[2]

The ALJ also observed that plaintiff acted "appropriately with his healthcare providers." Tr. 19. Plaintiff argues "[n]o evidence suggests that the limited interactions between [him] and the specialists involved in his care resemble the demands of competitive unskilled work and the interaction requirements . . . with supervisors and coworkers." Pl. Br. 12. Plaintiff's treatment records indicate he was "very pleasant" and "cooperative." Tr. 364, 538, 654; *see also* Tr. 845 ("pleasant and sociable"), 852 ("pleasant, conversant"), 936 ("friendly and cooperative"). Plaintiff also was "cordial" with Dr. Kaper during his evaluation and asked for directions to be reiterated when he needed it. Tr. 519. While this evidence is arguably not as probative as plaintiff's statement that he got along "fine" with supervisors, it is still somewhat indicative of plaintiff's ability to regularly interact with other people, including supervisors. *See Kelsie K. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-CV-01276-MC, 2022 WL 17414506, at *4-5 (D. Or. Dec. 5, 2022) (upholding the ALJ's decision where self-reports of a plaintiff's ability to get along with

---

[2] This information comes from the Function Report, where plaintiff was asked, "How well do you get along with authority figures?," and responded, "I get along with them fine, usually." Tr. 258. Plaintiff also checked the "no" box when asked, "Have you ever been fired or laid off from a job because of problems getting along with other people?" *Id.*

6 – OPINION AND ORDER

authority figures, combined with her cooperative and pleasant attitude toward her providers, showed that her ability to work with supervisors was intact).

Plaintiff claims the ALJ failed to account for other evidence that demonstrated his difficulty interacting with others, including his testimony that he is unable to attend important family gatherings such as birthdays. Pl. Br. 10. However, the ALJ observed that plaintiff was otherwise able to spend time with a friend, go to a concert, play the guitar at a memorial service, run errands, and use a dating app. Tr. 19 (citing Ex. 3E/4-6, 10F/16, 30, 36, 119, 14F/9, 18, 15F/101, 206); *see also* Tr. 522 (Dr. Kaper's evaluation noting plaintiff "regularly runs errands in this city without significant anxiety"). The ALJ further noted there was "no persuasive explanation" for the gap in plaintiff's mental health treatment between May 2018 and April 2019. Tr. 22. The ALJ also observed there was a "lack of additional specialized mental health treatment beyond . . . therapy/counseling sessions with the social worker and QMHP," Tr. 22, 23, and found the fact that plaintiff "declined referrals for a psychiatric evaluation and additional treatment with neurofeedback . . . suggests his symptoms were less limiting than alleged." Tr. 23 (citing Ex. 15F/93, 128). From this record, the ALJ reasonably concluded that plaintiff is less limited than he claims and not more than moderately limited in interacting with others. *Id.*

Finally, plaintiff contends the ALJ failed to consider how his deficits in processing speed impact his social functioning capacity. Plaintiff points to his borderline processing speed test results and Dr. Kaper's opinion that "he [can] only sustain simpler tasks if there [are] very few interpersonal demands put on him." Plaintiff contends that, "[b]ased on Dr. Kaper's findings, at a minimum, the ALJ should have restricted [him] from interaction with others." Pl. Br. 15. But, again, Dr. Kaper did not opine that plaintiff could have no interpersonal interactions; Dr. Kaper's statement that plaintiff could "sustain simpler tasks if there [are] very few interpersonal

7 – OPINION AND ORDER

demands" contemplates that plaintiff could have some interpersonal contact. Also, while plaintiff claimed to Dr. Kaper that he had trouble multi-tasking, Dr. Kaper observed that plaintiff's performance on the Span of Attention and Working Memory test "was firmly in the [a]verage range." Tr. 523. Dr. Kaper's testing also showed that plaintiff had an average Computation score and an above average Fund of Knowledge score. Tr. 523. The ALJ cited these test scores as "evidence of [plaintiff's] mental functioning" that helped him conclude that plaintiff could "work fulltime if he chose to do so." Tr. 23.

In sum, while plaintiff argues for a different interpretation of the record, the ALJ's interpretation is rational and is therefore entitled to deference. *Ford v. Saul*, 950 F.3d at 1156. Because the ALJ did not err in formulating the RFC, there is no error at step five.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED April 29, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
